15151

BINGHAM v. POWELL *ET AL.*

(11 S. E. (2d), 275)

March, 1940.

*Messrs. Robert W. Shand* and *Dargan & Paulling,* for appellant,

*Messrs. Cole L. Blease* and *Blease Ellison,* for respondents,

October 31, 1940.

The opinion of the Court was delivered by MR. JUSTICE STUKES.

This is an action for actual and punitive damages alleged to have accrued to the plaintiff (in which, however, the jury found only actual damages) as the result of personal injuries received in a collision between plaintiff's automobile which he was driving and a freight train of the defendants. The collision occurred on September 28, 1938, on a public road known as the "Old Society Hill and Darlington Highway" at a grade crossing of a branch or side track of the defendants' railroad, apparently used to serve an industrial plant and referred to by one of defendants' counsel as the "Bleachery siding," about a half mile from the city limits of Hartsville. The impact of the automobile was with the second freight car from the locomotive while the train was at

rest, being engaged in switching operations. Thus the road was completely obstructed by the stationary train, there being off the road to plaintiff's left as he approached the crossing about one and a half freight cars (each in total length thirty to forty feet) and beyond them the locomotive; to the right there were seven or more cars. It was after nightfall and it was raining; and plaintiff testified that his vision was further obstructed, until it was passed, by the lights of a parked automobile about seventy-five feet from the track, facing him on his left, and that he saw the cars only when in a few feet of them, whereupon he applied his brakes and the collision followed, he having time only sufficient to warn his companion.

Plaintiff alleged as negligence, recklessness and willfulness on the part of the defendants the failure to provide warning of the presence of the train by notice, sign, signal, light, flagman or watchman; and also the failure to have the necessary number of men in the crew of the train and in allowing the train to remain upon the highway and thus obstruct the latter for an unreasonable and unnecessary length of time. The answer contained in effect a general denial of the material allegations of the complaint and the plea of contributory negligence, recklessness and willfulness on the part of the plaintiff.

There is found no testimony as to the number of men in the crew of the train but several testified who were members of the crew and each of such testified that he was engaged in some duty which occasioned his presence at one end or the other, or practically at the end, of the train, and it is undisputed that no member of the crew was at the crossing and none was making any effort to warn highway travelers of the presence of the train. Plaintiff's witness, Harrell, who operated and was present at a filling station on the road "thirty-two or thirty-three steps" beyond and on the other side of the train from plaintiff's approach to the crossing, testified that he had noticed the train before the collision "shifting, in and out," and that it had been at rest over the

crossing for two or three minutes before the collision. Members of the train crew varied in their testimony as to the length of time that the train had been stopped over the crossing from "between thirty seconds and a minute" to "between one minute and one and a half minutes."

At the time of the wreck there was a building, since removed, on plaintiff's left of the road and about thirty feet therefrom, which plaintiff testified did not obstruct his view of the crossing but cut off his view of the engine if the latter was to the back of it as he approached.

Further reference to the facts which the plaintiff's evidence tended to prove will be later made, but it may be here stated that a considerable portion of the testimony centered about the contention of the defendants that the plaintiff was drunk at the time of the occurrence. However, the testimony thereabout was in conflict; physicians who saw the plaintiff at the hospital, where he was promptly taken for treatment of his painful and extensive injuries which rendered him temporarily unconscious according to his and other testimony, differed sharply as to whether he was under the influence of an intoxicant; and one of the trainmen, a defendants' witness, testified that the plaintiff was not drunk. Odor of whiskey was upon him and after the wreck an open bottle was found on the floor of the automobile from which whiskey had spilled and which still contained a small amount. Plaintiff testified that this was the property of a former passenger in the automobile who had just before been put out at his home. Plaintiff lived in Hartsville and the occasion of his trip was to take to their respective homes several friends with whom he had been at the armory. At the time of the collision there remained in the car only one passenger, for whose home the automobile was bound, and who testified at the trial as a witness for the plaintiff and largely in corroboration of him.

Despite motions in behalf of the defendants for nonsuit and directed verdict, the trial Judge submitted all issues to the jury with the result mentioned above. Defendants have

appealed upon a single exception charging error in the refusal of their motions for nonsuit and directed verdict upon grounds as follows:

"(a) That the plaintiff has failed to prove any actionable negligence on the part of the defendants, and

"(b) That the evidence is susceptible of no other reasonable inference than that the plaintiff's gross negligence, unlawful conduct and recklessness caused or contributed to his injuries, as a proximate cause, without which they would not have occurred; whereas the evidence produced by the plaintiff and his witnesses, when considered alone, and all the evidence in the case, when considered as a whole, proves conclusively that the plaintiff's negligent, reckless and unlawful conduct was the sole or a contributing proximate cause of the injuries complained of, and excludes any other reasonable inference."

It is well established that in passing upon the defendants' motions below it was incumbent upon the Court to view the testimony for the plaintiff in the most favorable light to him and it is with this rule in mind that we approach the consideration of defendants' exception, and only after careful examination of the entire record of the trial.

Let us examine the authorities which appellants cite to sustain their position that the only reasonable inference which can be drawn from the evidence adduced by the respondent, considered alone or with that of appellants, is that there was no evidence of negligence on the part of appellants to go to the jury or that respondent at least contributed to his injuries by reckless and willful conduct.

The facts in *Robinson v. Atlantic C. L. R. Co.*, 179 S. C., 493, 184 S. E., 96, 99, were very different from those here involved and the authority of that case is in nowise controlling here. There the accident occurred on a principal street in the City of Florence at about 8:30 o'clock in the morning when there was good visibility and under such circumstances that plaintiff's intestate could

not have failed to see the approaching train had he made the slightest effort to do so and it was concluded by the Court that the only reasonable inference to be drawn from the evidence was that the deceased and his companion, who was propelling the bicycle on which they both rode, were conscious of the approach of the train and attempted to clear the crossing before it, establishing gross contributory negligence as a matter of law. The case laid down certain general principles which may be aptly quoted here:

"It is not possible to lay down any definite rule by which to determine whether the question of contributory negligence is to be found, under the evidence, as a conclusion of law, or should be submitted to the jury as a question of fact. The determination of the question must necessarily be controlled by the facts and circumstances of the particular case. The Court will not decide it as one of law if the testimony be conflicting, or if the conclusion to be drawn therefrom is doubtful and uncertain. This we have decided time and again. For under such circumstances the question clearly falls within the province of the jury.

*　　*　　*

"Ordinary prudence might require a particular crossing to be flagged at a certain time and not at others, on account of the circumstances or extraordinary danger, and this has been held ordinarily a question for the jury. * * *" (Citing authorities.)

*Funderburk v. Powell,* 181 S. C., 412, 187 S. E., 742, 746, involved an accident which occurred within the Town of McBee, but under other circumstances somewhat similar to the instant case. However, there was an electric street light suspended above the center of the street on the side of plaintiff's approach and at a distance of from thirty-five to sixty feet from the crossing where the automobile in which the plaintiff was riding collided with the stationary train of the defendant at about ten o'clock at night. Weather conditions were not adverse as here and there was no obstruction to the view of plaintiff or her driver on their side of the

crossing as·there was in the instant case (the parked lighted automobile of another), but the driver testified that he was blinded from a point about one hundred fifty feet from the crossing by lights of an automobile on the opposite side of the train and shining under it, despite which he continued to drive on without effort to stop. Here there was testimony of such an effort and the application by the plaintiff of his brakes. This Court held in the cited case that the admitted failure of the driver to attempt to stop his automobile, although according to his own testimony he could see nothing ahead of him, rendered him guilty of recklessness and willfulness as a matter of law. However, plaintiff's recovery was permitted to stand as the recklessness and willfulness of the driver was held to be not imputed to the plaintiff.

Consideration of the facts disclosed in the *Funderburk case* and those in the instant case clearly demonstrate that they are more favorable to the plaintiff in this than in the former case. Besides the important differences in physical conditions and in the conduct of the drivers pointed out above, there the obstruction was of a town street and the crossing was lighted by an electric street light and the stop of the train was for the purpose of taking on water for the use of the engine; in the instant case the obstruction was of an unlighted country road crossing and for the purpose of shifting back and forth and intermittently completely blocking the crossing. Yet in the *Funderburk case* this Court declined to say as a matter of law that the defendant was not guilty of actionable negligence and concluded the discussion of the point in this appropriate language: "The Court is not holding that the mere blocking of a railroad crossing by a train under the facts disclosed here, constitutes *prima facie* negligence—nothing else appearing. It is an axiom that the facts speak the law, and the decision in each case must depend upon its own peculiar facts and circumstances. The submission to the jury of the question of actionable negligence here was proper. The inferences to be drawn from the facts were in doubt."

Appellants finally rely upon *Breeden v. Rockingham Rail-road Company,* 193 S. C., 220, 8 S. E. (2d), 366. However, that decision is plainly not apposite. It involved a moving train and a crossing which the plaintiff approached in daylight at a speed of thirty to thirty-five miles per hour despite his knowledge that he would have no view of the approaching train until he reached a point approximately thirty feet from the track, which knowledge and action on the part of the plaintiff was held to constitute gross negligence as a matter of law.

In this case the testimony shows that plaintiff knew the crossing, the approximate location of the track, and that he was approaching it, but none of such would charge him, in our view, with foresight of the complete blocking of the crossing by unlighted and unguarded freight cars despite the darkness and rain, and we think and hold that the circumstances herein pointed out require the conclusion that the issues involved in this appeal were properly submitted to the jury.

There are many precedents in the decisions of this Court for the view we take but it would needlessly prolong this opinion to review them. See *Myers v. Atlantic C. L. R. Co.,* 172 S. C., 236, 173 S. E., 812; *Spiers v. Atlantic C. L. R. Co.,* 174 S. C., 508, 178 S. E., 136; *Kneece v. Southern Ry. Co.,* 187 S. C., 195, 197 S. E., 673, and the numerous earlier cases therein cited.

We are not unmindful of the principles long established by this Court that it is "always train time at a railroad crossing" and that one approaching must make use of his senses, to the best of his ability under the circumstances, to ascertain the presence or approach of a train and do so in time and place, so far as is reasonably within his control, to be effective; but a careful review of the evidence here in the light of the authorities last cited, convinces us that the Court below and this Court cannot decide the issues contained in appellants' exception without invading the province of the jury.

It may be added that the situation portrayed by the evidence here presented might well be one of more danger to the traveler upon the highway than that of a train in movement over a grade crossing under the same conditions of poor visibility induced by darkness, rain and fog, for the highway traveler would in the case of a moving train be first afforded the warning and protection of the statutory crossing signals by whistle or bell, the illumination of the crossing provided by the headlight of the locomotive and then the movement of the engine and cars which would occasion noise and also are much easier to discern by sight in darkness than are unlighted, stationary cars. Whether the failure by the defendants to provide something in substitution by way of light, flagman, watchman or other means for the usual warnings of a moving train at this rural and unlighted crossing was in the exercise of ordinary prudence, or in negligent or willful and reckless disregard of such standard, were questions properly determinable by the jury, and likewise were the questions of whether the plaintiff was guilty of contributory negligence or recklessness and willfulness, under proper instructions of the trial Judge; and in this appeal there is no complaint of the latter's instructions.

Likewise we are conscious of the priority of the right of way of a train over any other vehicle at a railroad crossing, but whether such right of way may be preempted by a train at rest for its own convenience, in the rain and darkness of the night, without safeguard or caution to warn the highway traveler of the danger in his way, cannot be determined by this Court as a matter of law but, as indicated in the opinion in the *Robison case, supra,* each such instance must be determined in the light of its peculiar facts; and under our system of jurisprudence the issues of due care, negligence, willfulness and recklessness on the part of the defendant and the plaintiff must ordinarily be submitted to the jury for determination under proper instructions of the trial Judge as to their respective meanings and effect. In this case that was done. Only when the Court finds but one

reasonable inference deducible from the evidence will it take the course here sought by appellants; this is not such a case.

The exception is overruled and the judgment below affirmed.

MR. CHIEF JUSTICE BONHAM, MESSRS. JUSTICES BAKER and FISHBURNE and MR. ACTING ASSOCIATE JUSTICE L. D. LIDE concur.